UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:19-CR-0030 KJM |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| Jeffery Parsons, | |
| Defendant. | |

Defendant Jeffery Parsons moves for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A). He argues his health conditions and the harshness of his conditions of imprisonment are "extraordinary and compelling reasons" to grant his request. The motion was submitted without a hearing and is **denied.**

I. **BACKGROUND**

Mr. Parsons pled guilty and was convicted of conspiracy to pay and receive illegal gratuities (count 1) and sell property belonging to the United States (count 2), in violation of 18 U.S.C. § 371. *See* Plea Agreement, ECF No. 13. On September 10, 2020, this court sentenced him to 12 months and one day on each count, to be served concurrently for a total term of 12 months and one day in prison. *See generally* Judgment & Commitment, ECF No. 52; Sentencing Hr'g Mins., ECF No. 53. The court recommended defendant be incarcerated in a "Montana

facility[1] that can facilitate family visitation and take account of the defendant's health risks related to [his Body Mass Index or] BMI." Judgment & Commitment at 2.

When Mr. Parsons self-surrendered, the Federal Bureau of Prisons (BOP) designated him to the Federal Correctional Institution (FCI) Herlong in California and placed him in the Special Housing Unit (SHU) upon his arrival there on October 26, 2020. Mot. at 3, ECF No. 60; Opp'n at 11, ECF No. 62 (conceding Parsons spent approximately four months in the SHU at FCI Herlong, because BOP personnel deemed him a risk given that locked facility's proximity to Sierra Army Depot in Herlong, where defendant committed his crime). Mr. Parsons was then transferred from FCI Herlong to the Nevada Southern Detention Center in Pahrump, Nevada (NSDC). *See* Opp'n at 4. After two months in Pahrump, the government confirms Mr. Parsons was transferred once again, from NSDC to the Federal Detention Center (FDC) Sea-Tac in Seattle, Washington. *See generally* Gov't Reply to Order, ECF No. 70. Mr. Parsons' projected release date is September 1, 2021. *See* Pub. Info. Inmate Data at 2, ECF No. 70-1. As of this writing he has completed approximately 57 percent of his incarceration sentence. *Id*.

Mr. Parsons has provided copies of his medical records, which reflect his BMI is 33.25, as well as his high blood pressure and obstructive sleep apnea. Med. Records (March 30, 2021) at 3–4, ECF No. 68 (sealed). While BOP Health Services did not regularly monitor his high blood pressure when he was housed at FCI Herlong or at NSDC, he is now receiving the correct dosage of blood pressure medication at FDC Sea-Tac. Def. Second Reply at 1, ECF No. 75. He can now also use his Continuous Positive Airway Pressure (CPAP) machine to treat his sleep apnea as recommended by his primary care physician. *Id*.

Mr. Parsons moves to reduce his custodial sentence to time served under 18 U.S.C. § 3582(c). *See generally* Mot. Given Mr. Parsons' multiple transfers while the motion has been pending, the court sought supplemental briefing from the parties. Order, ECF No. 69; Gov't

---

[1] While the court's recommendation is only that, this case demonstrates the completely non-binding nature of the recommendation, which noted Mr. Parsons' health issues. In a prior era, the BOP let a sentencing judge know by courtesy letter when it was not able to follow the judge's recommendation, a practice that appears to have been abandoned during this judge's time on the bench.

2

Resp., ECF No. 70; Def. Status Report, ECF No. 71. In one of his supplemental filings, Mr. Parsons argues the harsh conditions of confinement in the SHU during his time at FCI Herlong are an unconscionable consequence of the pandemic and of BOP's "botched handling of it." Def. Second Reply at 3. The matter is fully briefed, and the court has submitted it without hearing. *See* Minute Order, ECF No. 72.

## II. LEGAL STANDARD

The district court that imposed a custodial sentence can modify the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. The defendant must first exhaust administrative remedies. *Id.* § 3582(c)(1)(A). If a defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons warrant" the requested reduction. *Id.* § 3582(c)(1)(A)(i). Second, the court must consider the same factors that were applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable. *See id.* § 3582(c)(1)(A).

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See* U.S.S.G. § 1B1.13 (last amended November 1, 2018). The Ninth Circuit recently has clarified: "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda,* No. 20-10245, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021). Thus, the court here adheres to its prior practice of considering the Sentencing Commission's policy statement as guidance, recognizing that applying the policy statement is not required.

Although the Ninth Circuit has not decided which party "bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the [First Step Act], district courts to have done so agree that the burden remains with the defendant." *United States v. Becerra*, No. 18-0080, 2021 WL 535432, at *3 (E.D. Cal. Feb. 12, 2021).

3

## III. ANALYSIS

### A. Exhaustion

As evidenced by correspondence attached to Mr. Parsons' motion, he submitted a request for reduction in sentence well over 30 days ago, on November 23, 2020. *See* Req. to Warden at 1, ECF No. 60-2. Four days later the Warden responded denying his request. *See id.*, Warden's Resp. at 1, ECF No. 60-3. The government does not dispute the exhaustion requirement has been satisfied. Opp'n at 5. Accordingly, the court finds the exhaustion requirement is met here and proceeds to consider the merits of the motion below.

### B. Extraordinary and Compelling Reasons

Many federal district courts, including this court, have held that defendants can demonstrate "extraordinary and compelling reasons" for compassionate release under § 3582(c)(1)(A)(i) if they show (1) their health conditions put them at an increased risk of severe COVID-19 and (2) they are at risk of infection because their facility is currently suffering from a COVID-19 outbreak or is at risk of an outbreak, for example because it is a congregate living facility in which inmates and staff cannot consistently maintain safe physical distances. *See, e.g.*, *United States v. Terraciano*, 492 F. Supp. 3d 1082, 1085 (E.D. Cal. 2020) (collecting cases).

First, district courts including this one have found comorbidities including obesity and hypertension constitute medical conditions that increase the risk of severe illness from COVID-19, warranting compassionate release. *United States v. Fernandez*, No. 2:16-CR-00115, 2020 WL 5909490, at *5 (E.D. Cal. Oct. 6, 2020). Here, it is undisputed defendant suffers from these two comorbidities. Med. Charts at 1–7, ECF No. 66 (under seal); *see generally* BOP Health Services Med. Encounter Notes, ECF No. 68-1 (under seal). In this respect, his health conditions increase his risk of severe illness in the face of COVID-19. *See, e.g., United States v. Richardson*, No. 17-00048, 2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("obesity alone" and "hypertension alone" placed defendant "at higher risk of COVID-19 complications"). The court finds Mr. Parsons combination of health conditions weighs in favor of his release.

/////

Second, as of April 21, 2021, the BOP reported 1 confirmed case among inmates at Sea-Tac. *See* Gov't Resp. to Status Report at 3, ECF No. 73. As of the date of this order FDC Sea-Tac, where Mr. Parsons is currently housed, reports 0 inmates and 1 staff test positive for COVID-19.[2] Additionally, 221 inmates and 45 staff are listed as recovered. *Id*. Judicially noticeable information shows FDC Sea-Tac has provided COVID-19 vaccinations to 99 staff and 286 inmates.[3] The low rates of those infected by COVID at FDC Sea-Tac and the vaccination information indicate a lowered risk of infection for Mr. Parsons. This factor weighs against granting his motion.

Additionally, it appears FDC Sea-Tac has shown itself capable and willing to treat Mr. Parsons' medical conditions by providing him with further evaluation and treatment. *See generally* Med. Records, ECF No. 77 (documenting treatment for hypertension and sleep apnea); *see also* U.S.S.G. § 1B1.13 (ability to care for oneself is a significant consideration when determining appropriateness of sentence modification); *United States v. Fernandez*, No. 2:16-00115, 2020 WL 5909490, at *7 (E.D. Cal. Oct. 6, 2020) (totality of record includes defendant's ability to engage in self-care to protect himself against contracting COVID-19, as prescribed by reputable public health authorities). The court finds Mr. Parsons is likely now able to protect himself from contracting COVID-19 while still incarcerated by following CDC guidelines. This factor also weighs against granting his motion.

Finally, Mr. Parsons' "goal" with this motion is to "extract" himself from the "harsh" conditions of his confinement in the SHU: "lack of programming, sunlight, fresh air, family visits, and work . . ." *See* Mot. at 2; Def. Second Reply at 3. The government argues that given Mr. Parsons' transfer to the Sea-Tac facility, his alleged reasons for compassionate release are now moot. *See* Opp'n at 12. Although Mr. Parsons' request for compassionate release is not technically moot as a legal matter, his proffered reason for compassionate release is undercut by his transfer to FDC Sea-Tac, where the conditions are substantially different and better than the ones he faced while confined in the SHU at FCI Herlong. *Cf. United States v. Ogden*,

---

[2] https://www.bop.gov/coronavirus/ (accessed May 18, 2021).

[3] *Id*. (accessed May 18, 2021).

No. 2:07-CR-900, 2020 WL 4015730, at *3 (D. Utah July 16, 2020) (finding defendant's request for sentence reduction moot because reasons offered were addressed and "no extraordinary or compelling reasons remain[ed] to justify releasing"). Here, Mr. Parsons' reasons offered for compassionate release have been addressed and no extraordinary or compelling reasons remain to justify releasing him from the remaining time of his sentence. To the extent Mr. Parsons wishes to challenge his conditions of confinement in the SHU, such a claim is not properly brought in a motion for compassionate release, even if it may support a *Bivens*[4] action. *See Demille v. Jenkins*, No. 20-04559, 2020 WL 5944424, at *2 (N.D. Cal. Oct. 7, 2020) (ordering same). The court **denies** defendant's motion.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for compassionate release is **denied.**

This order resolves ECF No. 60.

IT IS SO ORDERED.

DATED: May 19, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).